UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEENA MILLER,

        Plaintiff,                           Civil Action No. 15-CV-10806

vs.                                             HON. MARK A. GOLDSMITH

RK GROCERS, LLC and
SPARTANNASH ASSOCIATES, LLC,

        Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (Dkts. 24, 27)

### I. INTRODUCTION

Plaintiff Deena Miller brought claims against Defendants RK Grocers, LLC ("RK") and SpartanNash Associates, LLC ("SpartanNash") pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., alleging that both Defendants violated her right to job restoration as guaranteed by the Act. During the Court's initial scheduling conference, and at the parties' request, the Court agreed to entertain early motions for summary judgment on the limited issue of whether a contractual release bars Plaintiff's present claims against Defendants. See 6/18/2015 Order (Dkt. 23). As explained fully below, the Court now concludes that the release bars Plaintiff's claims against Defendant SpartanNash, entitling it to judgment as a matter of law. Because the release absolved SpartanNash of any further or continuing obligations under the FMLA, RK also had no such duties to Plaintiff — even assuming it is a successor in interest under the statute. Accordingly, Plaintiff cannot proceed against RK on her claim, and it, too, is entitled to judgment as a matter of law.

1

## II. BACKGROUND

From December 29, 2008 until her termination on May 27, 2014, Plaintiff was employed as a deli clerk at SpartanNash's Pontiac, Michigan grocery store. Compl. ¶ 5 (Dkt. 1). On April 23, 2014, SpartanNash informed Plaintiff in writing that it had entered into an agreement to sell its Pontiac location, and, consequently, Plaintiff's employment with SpartanNash would terminate on or before May 31, 2014. SpartanNash Br. at 2 (Dkt. 24); see also 4/23/2014 Letter, Ex. A to SpartanNash Mot., at 26 of 39 (cm/ecf page) (Dkt. 24). The letter also explained to Plaintiff that employees could (i) apply for and receive consideration for continued employment at the store under new management; (ii) apply for open positions for which they were qualified at other SpartanNash stores (although employees would not have "bumping rights to other SpartanNash stores"); or (iii) receive a lump sum severance payment upon termination. SpartanNash Br. at 2; 4/23/2014 Letter at 26 of 39 (cm/ecf page). The letter stated that should an employee receive and accept an offer of continued employment with either the store's new owner or with SpartanNash, or otherwise accept a third-party offer of employment, the employee would be ineligible for the severance program. 4/23/2014 Letter at 26 of 39 (cm/ecf page).

On May 12, 2014, Plaintiff requested FMLA leave, to begin retroactively on May 9, 2014. SpartanNash Br. at 2; Compl. ¶¶ 10-11. Plaintiff's request was approved through July 28, 2014. FMLA Designation Notice, Ex. 1 to Compl. (Dkt. 1-2).

On May 27, 2014, SpartanNash sold its Pontiac store location to RK. Compl. ¶ 7. That same day, SpartanNash terminated Plaintiff as a result of the sale. Id. ¶ 12. On June 13, 2014, Plaintiff applied, and was approved, for unemployment insurance benefits beginning June 8, 2014. SpartanNash Br. at 3; see also Unemployment Insurance Benefits, Ex. C to SpartanNash Mot., at 32 of 39 (cm/ecf page) (Dkt. 24).

On June 30, 2014, Plaintiff applied for employment with RK, but RK elected not to hire her. Compl. ¶ 13; RK Br. at 7 (Dkt. 27). Also on June 30, 2014, Plaintiff signed a separation

2

agreement with SpartanNash. Pl. Resp. at 2 (Dkt. 30); SpartanNash Br. at 3; see also Separation Agreement, Ex. D to SpartanNash Mot., at 37 of 39 (cm/ecf page) (Dkt. 24).

The separation agreement sets forth the following relevant provisions:

- "[Plaintiff's] employment with the Company shall be considered terminated as of May 27, 2014."

- "By signing this Agreement, **[Plaintiff] release[s] the Company from any known or unknown claims that [she] may have against the Company**." "The release applies to the Company . . . and its directors, officers, employees, successors and assigns. It also includes any employee benefit plans or funds sponsored or administered by the Company [except vested benefits in retirement plans]." "This is a general release that applies to any and all claims, whether known or unknown, arising out of [Plaintiff's] employment with the Company or the termination of [Plaintiff's] employment. This release specifically includes any claims in existence at the time [Plaintiff] signed this Agreement arising under . . . any and all other federal, state, and local statutes and claims for wrongful discharge, whether based on contract, tort, or public policy." The release "does not apply to claims that may not be released as a matter of law."

- "**[Plaintiff] understand[s] and agree[s] that the termination of [her] employment with the Company is permanent, and that [she] will have no right to future employment with the Company**."

- Plaintiff had the right to revoke the agreement within seven days after she signed it, and the agreement would not become effective or enforceable unless the seven-day revocation period had lapsed without Plaintiff exercising her right of revocation.

See Separation Agreement at 1-3 (37-39 of 39 (cm/ecf pages)) (emphasis added, in part).[1] The separation agreement is signed by Plaintiff and the human resource director for SpartanNash. Id. at 3 (39 of 39 (cm/ecf page)). RK was not a party to the agreement.

On November 11, 2014, Plaintiff sent RK a letter notifying it of its purported obligation to restore Plaintiff to her position, because RK was a successor in interest to SpartanNash. Compl. ¶ 17. Subsequently, on March 5, 2015, Plaintiff filed suit alleging: (i) that SpartanNash

---

[1] The "Company" is defined as SpartanNash and its subsidiaries and affiliates. Separation Agreement at 1 (37 of 39 (cm/ecf page)).

3

violated the FMLA in failing to restore Plaintiff to equivalent available positions within geographically proximate worksites; and (ii) that RK "interfered with and denied" Plaintiff's FMLA rights by refusing to restore Plaintiff to her former position. Id. ¶¶ 18, 24-25.

### III. STANDARD OF DECISION

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Sixth Circuit has stated the following with respect to summary judgment motions:

> [C]redibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Thus, the facts and any inferences that can be drawn from those facts must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Biegas v. Quickway Carriers Inc., 573 F.3d 365, 373 (6th Cir. 2009) (brackets omitted).

### IV. ANALYSIS

There is no dispute as to the underlying events that comprise the relevant facts necessary to dispose of the current motions, although the parties do disagree as to the characterization and significance of those facts. As discussed in detail below, the Court concludes first that Plaintiff validly waived any claims she had arising out of SpartanNash's conduct that occurred prior to the execution of the separation agreement. The Court further concludes that, despite Plaintiff's characterization to the contrary, the conduct comprising the alleged FMLA violation — i.e., SpartanNash's action in terminating Plaintiff and foreclosing her right to future employment — did occur prior to the execution of the agreement. Therefore, Plaintiff validly released SpartanNash from that claim, entitling SpartanNash to summary judgment on that basis. Additionally, because an employee's entitlements under the FMLA are the same under a successor in interest as they would have been under a predecessor employer, RK's obligations

4

under the FMLA are coextensive with those of SpartanNash's — assuming RK is a successor in interest. And once Plaintiff signed the separation agreement, SpartanNash owed her nothing further, nor were there any FMLA duties for RK to inherit. Thus, RK also is entitled to summary judgment.

### A. Liability as to SpartanNash

As an initial matter, there is no suggestion that Plaintiff's FMLA claims do not fall within the plain language of the release. Indeed, the language broadly encompasses "any and all claims" arising out of Plaintiff's employment or termination, and explicitly includes those claims arising under federal statutes. E.g., Int'l Union, UAW, and UAW Local 1869 v. Gen. Motors LLC, 529 F. App'x 760, 765-766 (6th Cir. 2013).[2] Rather, the heart of the matter is whether Plaintiff's release is valid, given a Department of Labor ("DOL") regulation, 29 C.F.R. § 825.220(d), which prohibits employees from waiving their "prospective rights" under the FMLA.

SpartanNash's position is simply that, because Plaintiff signed the separation agreement after she was terminated, her FMLA rights were not prospective in nature and the release is valid. SpartanNash Br. at 10. Plaintiff takes a different view, contending that her lawsuit is predicated not on the initial termination decision, but, rather, on SpartanNash's subsequent failure to restore Plaintiff to an equivalent position within a geographically proximate area. Pl. Resp. at 7-8. Plaintiff's theory is that, because her right to restoration under the FMLA did not arise until the end of her leave (July 28), the right was prospective as of the date she signed the agreement (June 30), and therefore she could not validly release it. Id. at 5-6. At issue then, is what it means to have a "prospective right" within the meaning of the regulation.

---

[2] In any event, by not addressing SpartanNash's argument that the release language does encompass her FMLA claim, Plaintiff has waived any argument she may have on that issue. See Gomery v. Cont'l Cas. Co., No. 1:13-cv-947, 2014 WL 4209648, at *4 (W.D. Mich. Aug. 25, 2014) (collecting cases).

5

Upon review of the relevant legal landscape, the Court concludes that the proper focus is on the timing of the conduct allegedly denying or interfering with FMLA rights relative to the execution of any release. On this issue, SpartanNash has the better argument, because the conduct that actually gave rise to the alleged FMLA violation occurred, at the latest, when Plaintiff was presented with and signed the separation agreement. By that point, SpartanNash had clearly communicated to Plaintiff that her employment was terminated, that the termination was "permanent," and that she would have "no right to future employment" — i.e., she would not be restored to her job. Plaintiff's suggestion that the "failure to restore" conduct could not have occurred until after the signing of the agreement is unpersuasive, because it departs from a common-sense understanding of how employers and employees communicate their intentions regarding the termination of their relationship. Plaintiff's theory prohibiting the release of a claim for denial of future restoration — when the parties had clearly understood such restoration would not come about — would also effectively render post-dispute settlements meaningless, contrary to the intent expressed by the regulation.

A brief examination of the history behind the regulation is instructive. Prior to 2009, the regulation broadly prohibited any waiver of FMLA rights, rather than prohibiting only prospective waivers:

> Employees cannot waive, nor may employers induce employees to waive, their rights under FMLA. For example, employees (or their collective bargaining representatives) cannot "trade off" the right to take FMLA leave against some other benefit offered by the employer.

29 C.F.R. § 825.220(d) (2008). For some time, there was a circuit split over the precise meaning of that language. Some courts applied the language to bar all releases of claims not approved by a court or the DOL, even releases given after a settlement had been reached, while others read the regulation as barring only "prospective" waivers of rights. Compare Taylor v. Progress

Energy, Inc. ("Taylor I"), 415 F.3d 364, 368 (4th Cir. 2005), superseded by regulation, with Faris v. Williams WPC-I, Inc., 332 F.3d 316, 320 (5th Cir. 2003).

Because the latter view represented the view of the DOL, the regulation was amended in 2009 to clarify that intent. The amended regulation provides, in relevant part:

> Employees cannot waive, nor may employers induce employees to waive, their prospective rights under FMLA. For example, employees (or their collective bargaining representatives) cannot trade off the right to take FMLA leave against some other benefit offered by the employer. This does not prevent the settlement or release of FMLA claims by employees based on past employer conduct without the approval of the Department of Labor or a court.

29 C.F.R. § 825.220(d) (2009) (emphasis added).

In its explanation of the changes, the DOL "make[s] clear that an employee may waive his or her FMLA claims based on past conduct by the employer, whether such claims are filed or not filed, or known or unknown to the employee as of the date of signing the settlement or the severance agreement." The Family and Medical Leave Act of 1993, 73 Fed. Reg. 67934-01, 67988 (Nov. 17, 2008). By expressly permitting the release of claims based on "past employer conduct," the amended regulation sought to make the timing of the conduct the key to determining whether a release was valid or not. See also Taylor v. Progress Energy, Inc. ("Taylor II"), 493 F.3d 454, 458 (4th Cir. 2007) (describing the DOL's argument as distinguishing between prospective waivers for future violations and retrospective waivers for past violations), superseded by regulation.

In keeping with this interpretation, courts have focused on the timing of the allegedly unlawful conduct vis-à-vis the release, and have rejected the view that a release is prospective if it covers a claim for future leave or restoration that is already fully identified at the time the release is signed. In one of the most widely cited cases on the issue, Paylor v. Hartford Fire Insurance Company, 748 F.3d 1117 (11th Cir. 2014), the Eleventh Circuit rejected an argument

7

essentially identical to the one presently advanced by Plaintiff. In Paylor, the plaintiff sought FMLA leave and was ultimately presented with a choice by her employer: accept a severance package with a release of the FMLA claim or agree to a performance-improvement plan. Id. at 1120. Although she signed the severance agreement, she brought an FMLA action claiming that the release was unenforceable as a waiver of "prospective rights," which she defined as "the unexercised rights of a current eligible employee to take FMLA leave and to be restored to the same or an equivalent position after the leave." Id. at 1123. The Eleventh Circuit disagreed, holding that "'prospective rights' under the FMLA are those allowing an employee to invoke FMLA protections at some unspecified time in the future." Id. (emphasis added). The plaintiff's release was not prospective, because the severance agreement did not ask her "to assent to a general exception to the FMLA, but rather to a release of the specific claims she might have based on past interference." Id. at 1123-1124. Because the cause of action under the FMLA attaches to conduct and not "some free-floating set of 'unexercised' FMLA rights," and given that the regulation explicitly allows for settlement of claims based on past employer conduct, the Eleventh Circuit held that "'prospective' waiver means only that an employee may not waive FMLA rights, in advance, for violations of the statute that have yet to occur." Id.

Other courts have similarly concluded that a release of FMLA claims given as part of a termination of the employer-employee relationship validly includes claims for loss of job restoration. See Gleich v. St. Andrew Sch., No. 2:10-cv-894, 2011 WL 4573367, at *1-2, 5 (S.D. Ohio Sept. 30, 2011) (rejecting argument that release waived prospective rights when plaintiff signed away any right to future employment while she was on leave); Camp v. Bridgeway Ctr. Inc., No. 3:14cv123/MCR/EMT, 2014 WL 5430277, at *4-5 (N.D. Fla. Oct. 22, 2014) (rejecting plaintiff's argument that in executing a receipt for back wages, liquidated damages, employment benefits, or other compensation and waiving claims for wages for the

8

specified period she retained right to bring suit seeking reinstatement based upon prior termination, because release covered the prior employer conduct at issue, <u>i.e.</u>, the termination).

Our Plaintiff is similarly situated. She claims that the waiver she signed was prospective, because it covered a yet-unexercised right to restoration. But like the plaintiffs in <u>Paylor</u> and the other authorities cited above, Plaintiff had a right that was far from unspecified. It was a specified right that she gave up — a right to be restored to her position on July 28, 2014. SpartanNash's manifest intent to deny Plaintiff restoration was unquestionably part of the conduct that predated the execution of the release.

Notably, there was nothing ambiguous about the termination's impact on Plaintiff's right of restoration. The separation agreement unambiguously manifested both that her termination was permanent <u>and</u> that she had no right to future employment with SpartanNash. <u>See</u> Separation Agreement at 2 (38 of 39 (cm/ecf page)). This was all in accord with the information contained in the letter provided to Plaintiff back in April. Indeed, Plaintiff applied for unemployment benefits on the grounds that she had been "laid off" from SpartanNash even before she signed the separation agreement. <u>See</u> Unemployment Insurance Benefits at 1 (32 of 39 (cm/ecf page)). To agree with Plaintiff that the termination did not encompass the loss of job restoration would defy the economic reality of the parties' actions and is at odds with the conventional manner in which employers and employees alike communicate expectations and manage the termination of their relationship.

Plaintiff's attempt to segregate the alleged failure to restore from the actual termination is further undermined by court decisions rejecting her argument. <u>See</u> <u>Killian v. Yorozu Auto. Tenn., Inc.</u>, 454 F.3d 549, 556 (6th Cir. 2006) (concluding that the employer interfered with the plaintiff's right to restoration under the FMLA when it terminated her); <u>Gleich</u>, 2011 WL 4573367, at *5 (holding that "any claim to reinstatement to [plaintiff's] job would have accrued at such point when Defendants interfered with her right to job restoration after taking leave" by

9

terminating her, and further concluding that "[plaintiff] forfeited [ ] a claim for retaliatory discharge, and any remedy of reinstatement, when she waived those claims by executing the release and receiving compensation").

And finally, Plaintiff's proposed framework would work against the regulation's explicit allowance for employees to release and/or settle FMLA claims arising out of prior employer conduct. See 29 C.F.R. § 825.220(d). To adopt Plaintiff's argument would subject employers to lingering liability for the denial and/or interference of the right to leave or to job-restoration, even after the employee settled or released the employer from liability for the underlying conduct that triggered the violation in the first place. This would effectively render releases contained in severance or separation agreements meaningless.

There is no indication that the DOL intended such a result. Indeed, the DOL "believes [out-of-court settlements] promote[ ] the efficient resolution of FMLA claims[,] and [it] recognizes the common practice of including a release of a broad array of employment claims in severance agreements." The Family and Medical Leave Act of 1993, 73 Fed. Reg. at 67988; see also Taylor II, 493 F.3d at 459 (referencing the DOL's argument that a reading of the pre-2009 regulation as applying only to prospective waivers "is consistent with the well-accepted policy disfavoring prospective waivers [of rights], but encouraging settlement of claims, in employment law." (quoting the DOL's amicus brief)); Dougherty v. Teva Pharm. USA, Inc., No. 05-2336, 2007 WL 1165068, *6 (E.D. Pa. Apr. 9, 2007) ("[I]nsofar as the regulation bars the prospective waiver of rights, but permits (if not encourages) the private settlement of FMLA claims, the DOL has elected to treat the settlement of FMLA claims as being no different from the settlement of other federal employment claims." (collecting cases)).

In sum, because the conduct that gave rise to the alleged violation occurred prior to the execution of the separation agreement, Plaintiff validly released any claims she may have arising out of that conduct, and SpartanNash is entitled to summary judgment on that basis.

### B. Liability as to RK

Any potential liability RK may suffer under the FMLA is predicated on it being a successor in interest to SpartanNash. Compl. ¶¶ 15-16. Specifically, Plaintiff asserts that, as a successor in interest, RK had a duty to restore Plaintiff to her former position. Id. ¶ 17.

The regulation governing a successor in interest's obligations under FMLA provides as follows:

> When an employer is a successor in interest, employees' entitlements are the same as if the employment by the predecessor and successor were continuous employment by a single employer. For example, the successor, whether or not it meets FMLA coverage criteria, must grant leave for eligible employees who had provided appropriate notice to the predecessor, or continue leave begun while employed by the predecessor, including maintenance of group health benefits during the leave and job restoration at the conclusion of the leave.

29 C.F.R. § 825.107(c).

Both RK and Plaintiff rely on this regulation for their respective positions. According to RK, a successor employer has the same liability as a predecessor employer; therefore if SpartanNash is not liable, RK also cannot be liable. RK Suppl. Br. at 2, 3-4 (Dkt. 33). Plaintiff counters that the regulation states only that an employee's FMLA entitlements are the same under a successor employer as a predecessor employer — meaning that Plaintiff's right to job restoration carried over from SpartanNash to RK — but that neither the regulation nor RK's cited cases address whether a successor employer benefits from a release barring claims against the predecessor employer. Pl. Suppl. Br. at 2, 4 (Dkt. 34). To read that result into the regulation, Plaintiff continues, would undermine the remedial purpose of the FMLA, which should be liberally construed in the employee's favor. Id. at 3.[3]

---

[3] There also appeared initially to be a dispute as to whether RK was a "successor" as defined by the separation agreement such that it could take advantage of the release contained in the separation agreement. See RK Br. at 11 (suggesting that Plaintiff waived her claims against RK as "successor"); Pl. Resp. at 9-11 (implying that RK is a successor in interest as defined by the

11

The answer here is supplied by the plain language of the regulation: Plaintiff's "entitlements are the same as if the employment by [Spartan Nash] and [RK] were continuous employment by a single employer." Because Plaintiff waived any FMLA rights attendant to her then-existing leave — including her right to restoration — as to SpartanNash, she had no such entitlement against RK. There is no indication that an employee has greater rights against a successor in interest than she would have against the predecessor employer. And the regulation does not authorize new (or renewed) FMLA rights to spring into being when a successor in interest replaces a predecessor.

Thus, assuming RK is a successor in interest, it was required to treat Plaintiff in the same manner as SpartanNash would have treated her. Crucially, Plaintiff was not entitled to any continuing FMLA rights pursuant to her employment with SpartanNash because she settled all of her claims — including her FMLA claim — when she signed the separation agreement. At that point, SpartanNash was relieved of any FMLA obligation to restore Plaintiff to her former position. If an employee's entitlements are the same as if the employment was continuous under a single employer, then RK is correct that it also owed Plaintiff no subsequent duty of restoration. Therefore Plaintiff's claim against RK must fail as well.

## V.  CONCLUSION

For the foregoing reasons, the Court grants both Defendant SpartanNash's motion for summary judgment (Dkt. 24) and Defendant RK's motion for summary judgment (Dkt. 27).

SO ORDERED.

Dated:  March 17, 2016             s/Mark A. Goldsmith
        Detroit, Michigan          MARK A. GOLDSMITH
                                   United States District Judge

---

FMLA, but not as defined in the corporate context for purposes of the separation agreement). However, in supplemental briefing on this issue, RK conceded that it was not a successor for purposes of the separation agreement. See RK Suppl. Br. at 4.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 17, 2016.

s/Karri Sandusky<br>
Case Manager